UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Great Lakes Aviation, Ltd.                         Civ. File No. 07-4314 (PAM/JSM)

                Plaintiff,

v.                                                 **MEMORANDUM AND ORDER**

International Association of Machinists
Air Transport District 143, Stephen
M. Gordon, and National Mediation Board,

                Defendants.

---

This matter is before the Court on Plaintiff Great Lakes Aviation Ltd.'s ("Great Lakes") Motion for Temporary Restraining Order and Preliminary Injunction. All parties were present at the hearing and therefore the Court will consider the Motion as one for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Also pending is a Motion to Change Venue brought by Defendants International Association of Machinists Air Transport District 143 ("IAM") and its president and general directing chairman Stephen M. Gordon (collectively, "IAM Defendants"). For the reasons that follow, the Court denies both Motions.

**BACKGROUND**

The crux of this dispute is whether collective bargaining agreement ("CBA") negotiations, or "conferences," between Great Lakes and IAM "terminated" within the meaning of the Railway Labor Act at least ten days before IAM sought mediation services from Defendant National Mediation Board ("NMB"). If the conferences did so terminate,

then NMB is without jurisdiction to hold November 7-9, 2007, mediation proceedings. If the conferences did not terminate, then there are no grounds for the Court to enjoin the mediation.

As discussed below, the Court determines that Great Lakes has not met its burden for establishing that the conferences terminated at least ten days before IAM asked NMB for help. Accordingly, the Court denies Great Lakes' Motion for a Preliminary Injunction.

### 1. Parties and Their Positions

Great Lakes is a regional airline headquartered in Cheyenne, Wyoming, with hubs in Denver, St. Louis, Kansas City, and Phoenix. As a "carrier," see 45 U.S.C. § 181, it is subject to the Railway Labor Act. The IAM Defendants, based in Mendota Heights, Minnesota, represent Great Lakes' mechanics and clerks for purposes of CBA conferences. NMB is statutorily required to assist carriers and their employees resolve disputes. 45 U.S.C. §§ 153-155. Either party to a CBA may request NMB services. 45 U.S.C. § 155.

Under the Railway Labor Act, CBAs do not expire but instead become amendable on a certain date, after which one or both parties may serve notice of an intention to change pay rates, rules, or working conditions. Such notices are served pursuant to Section 6, or 45 U.S.C. § 156, of the Railway Labor Act, which states in relevant part:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions[.] . . . In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted

>    upon, as required by section 155 of this title, by the Mediation Board, <u>unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.</u>

<u>Id.</u> (emphasis supplied).

The clerks' CBA became amendable in 2001, and the mechanics' and related employees' CBA became amendable in 2005. IAM served Section 6 notices to open negotiations on the clerks' CBA in December 2001, and on the mechanics' CBA in August 2005. IAM requested NMB services on August 1, 2007, and NMB then scheduled mediation for October 18-19 and November 7-9, 2007.

The heart of the parties' factual disagreement is whether various communications (or lack thereof) between Great Lakes and IAM that occurred at least ten days before August 1, 2007, evince a "termination of conferences" such that NMB lacks jurisdiction to compel upcoming mediation under the Railway Labor Act.

IAM argues that conferences have been ongoing, and that at no point has Great Lakes advised IAM that the carrier considers conferences to have terminated on either the clerks' or mechanics' contract. For support, IAM points to its March 5, 2007, correspondence to Great Lakes asking the carrier to respond "regarding a convenient date to be agreed upon to schedule negotiations" in both contracts. (Am. Compl. Exs. 3-4). IAM contends that in the months following this communication contract negotiations continued from time to time. (<u>See</u> McNeil Decl. ¶¶ 4-6.) As evidence that Great Lakes did not consider conferences to have terminated by August 1, 2007, IAM points to September 26, 2007, correspondence from Great Lakes wherein the airline's counsel referenced an agreement to "soon confer

about a preliminary meeting to discuss Section 6 bargaining." (Gordon Decl. Ex. 7.) In arguing that Great Lakes was anticipating mediation, IAM points to October 3, 2007, correspondence wherein Great Lakes stated that "[u]pon invocation of mediation, the process is no longer in the parties' hands: hereinafter the mediator is in charge." (Id. Ex. 9.) IAM characterizes Great Lakes' challenge to NMB jurisdiction as a recent development.

Great Lakes asserts that IAM's various Internet postings, communications with Great Lakes, "and the passage of time" compel the conclusion that negotiations terminated more than ten days before August 1, 2007. (Pl.'s Supp. Mem. at 3-4.) According to Great Lakes, after the April 26, 2006, conference "[i]t soon became evident that future conferences would be futile" and IAM "showed little interest in bargaining on behalf of employees who were not paying dues." (Id. at 3.) For support, Great Lakes also references IAM's letter of March 5, 2007, wherein IAM stated that "there's still no movement on the company's part" regarding either contract. (Am. Compl. Exs. 3-4.) This, according to Great Lakes, evinces an acknowledgment from IAM that "bargaining had long ago ceased." (Pl.'s Supp. Mem. at 3-4.) Great Lakes further suggests that termination of conferences can be inferred because the carrier has given pay raises and otherwise has altered employment terms, to employees' benefit and without IAM's objection. (See Lewis Aff. ¶¶ 3-8.)

NMB, for its part, acknowledges that this Court has jurisdiction to decide whether conferences have terminated pursuant to the Railway Labor Act. Nevertheless, NMB maintains that its obligation to proceed with the November 7-9, 2007, mediation remains. (Gordon Decl. Ex. 13.) NMB notes that Great Lakes attended the first day of the October

4

18-19 session. Great Lakes states that it did this "[o]ut of respect for the National Mediation Board," but that it disputed NMB's jurisdiction on the grounds that more than ten days have passed since CBA conferences were terminated. (Gordon Decl. Ex. 11.)

### 2. Recent Developments

On October 19, 2007, IAM commenced an action in the District of Colorado seeking a declaration that the NMB had jurisdiction over the dispute on the ground that the ten-day period had not run, and requesting injunctive relief to that effect. See Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, et al. v. Great Lakes Aviation, Ltd., et al., No. 07-CV-2209 (D. Colo.). On the next business day, October 22, 2007, Great Lakes commenced this action seeking a declaration that NMB lacked jurisdiction over the parties' dispute because the ten-day period had run, and requesting injunctive relief to that effect.

On October 26, 2007, the IAM Defendants filed a Motion to Change Venue to the District of Colorado based on the "first-filed rule." All parties appeared at an October 29, 2007, hearing before this Court. NMB took no position on venue but requested that the Court find that NMB has jurisdiction to hold the November 7-9 mediation. On November 1, 2007, IAM informed the Court that the court in the District of Colorado had issued a temporary restraining order directing that Great Lakes shall maintain existing wages, rules, and working conditions. (Supp. Mem. in Supp. of Mot. to Transfer Venue Ex. A.) The order expires on November 10, 2007, and a hearing on IAM's request for a preliminary injunction is scheduled for November 7, 2007, in Colorado.

**DISCUSSION**

**A.    Venue**

The IAM Defendants' sole basis for their Motion to Change Venue is the first-filed rule.[1]  See Orthmann v. Apple River Campground, 765 F.2d 119, 121 (8th Cir. 1985) ("the first court in which jurisdiction attaches has priority to consider the case").  However, the Motion is governed by criteria in 28 U.S.C. §§ 1404(a) and 1406(a), which state that venue be determined according to "convenience of parties and witnesses" and "the interests of justice."  The first-filed rule "is not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration."  Orthmann, 765 F.2d at 121 (dismissing the first-filed action).  The rule does not "trump" §§ 1404 and 1406.  Terra Int'l, Inc. v. Miss. Chem. Corp., 922 F. Supp. 1334, 1349 (N.D. Iowa 1996), aff'd 119 F.3d 688 (8th Cir. 1997).

In this situation, the convenience-of-witnesses factor is not determinative because the parties' affidavits indicate that witnesses can be found in Minnesota, Colorado, and Wyoming.  However, the convenience-of-parties factor weighs in Great Lakes' favor.  Although Great Lakes lacks significant operations in Minnesota, its chief negotiating counsel is located here. More significantly, the IAM Defendants—including Defendant Gordon—are

---

[1] Great Lakes questions whether this Motion is properly before the Court given that the IAM Defendants obtained a January 17, 2008, hearing date for it.  However, Great Lakes has effectively defended against the venue Motion, and for purposes of resolving Great Lakes' Motion for a preliminary injunction the Court will assume jurisdiction over the venue Motion as well.  See Medtronic v. Camp, No. 02-CV-285, 2002 WL 207116 (D. Minn. Feb. 6, 2002) (Magnuson, J.) (assuming jurisdiction and considering merits of request for temporary restraining order where issues surrounding first-filed action were unresolved).

to be found not in Colorado, but in Mendota Heights, Minnesota. Further, IAM is ably represented by counsel in this District. Any inconvenience to IAM is slight. If there is inconvenience, it appears to be borne by Great Lakes.

Further, Great Lakes chose its forum. A plaintiff's choice of forum receives deference. See Nelson v. Soo Line R.R. Co., 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999) (Doty, J.) (citations omitted). Of course, this is true both for Great Lakes in the District of Minnesota and the IAM Defendants in the District of Colorado. However, when determining whether the preference afforded to the plaintiff's forum might yield, the Court should examine whether "underlying facts did not occur in the chosen forum." Id. Here, it appears from the parties' correspondence and affidavits that some if not most facts regarding whether conferences have terminated occurred in the District of Minnesota. This further compels the conclusion that venue is proper in this District. Accordingly, the Court denies the IAM Defendants' Motion to Change Venue.

**B.    Request for Immediate Relief**

In cases involving labor disputes, this Court examines motions for immediate relief under both the factors in Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981) and the Norris-LaGuardia Act, 29 U.S.C. § 107. See Northwest Airlines, Inc. v. IAM, 712 F. Supp. 732, 738 (D. Minn. 1989) (Magnuson, J.).

The familiar Dataphase factors are: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4)

the public interest. Dataphase Sys., Inc., 640 F.2d at 113. The Norris-La Guardia Act states that in a case growing out of a labor dispute, no injunction shall be issued unless the Court makes findings of fact to the effect—

> (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained . . . ;
>
> (b) That substantial and irreparable injury to complainant's property will follow;
>
> (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
>
> (d) That complainant has no adequate remedy at law; and
>
> (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. § 107. As this Court has observed, "[c]riteria (a)-(c) are covered by a Dataphase analysis." Northwest Airlines, Inc., 712 F. Supp. at 738.

### 1. Probability of Success

To succeed in its Motion, Great Lakes must show that it likely will succeed in establishing that conferences with IAM terminated within the meaning of Section 6 at least ten days before August 1, 2007. There is no dispute that if the conferences so terminated, then NMB has no jurisdiction to consider the dispute.

The Railway Labor Act, which dates to 1926, imposed the Section 6 mediation requirement so that parties had "an obligation to make every reasonable effort to negotiate a settlement and to refrain from altering the status quo by resorting to self-help while the

Act's remedies were being exhausted." Detroit & T.S.L.R. Co. v. United Transp. Union, 396 U.S. 142, 149 (1969).

> A final and crucial aspect of the Act was the power given to the parties and representatives of the public to make the exhaustion of the Act's remedies an almost interminable process. . . . [T]he procedures of the Act are purposely long and drawn out, based on the hope that reason and practical considerations will provide in time an agreement that resolves the dispute.

Id. (internal citation omitted).

However, the mediation requirement is not without limits. The ten-day rule is strictly enforced, and its expiration entitles parties to self-help. See Iberia Air Lines of Spain v. Nat'l Mediation Bd. et al., 472 F. Supp. 104, 108 (S.D.N.Y. 1979). Lax enforcement would "frustrate the obvious purpose of the limited status quo provisions of Sections 5 and 6, the preservation of the ultimate right of the parties, implicit in the statutory scheme, to resort to economic self-help." Id.

Separate from the question of how strictly to enforce the ten-day rule is the question of when the period begins to run. As stated above, Great Lakes asserts that it began running on April 26, 2006, or in the alternative at least ten days before August 1, 2007. The IAM, meanwhile, contends that the period has not begun to run.

In United Transportation Union v. Delaware & Hudson Railway Co., 977 F. Supp. 570 (N.D.N.Y. 1997), the court ruled that the ten-day period begins running only after at least one party gives a "clear and unequivocal communication" to that effect. Id. at 574, 576. Courts have cited United Transportation Union approvingly. Among them is the United States Bankruptcy Court for the District of Minnesota, in In re Mesaba Aviation, 350 B.R.

112 (Bankr. D. Minn. 2006) (Kishel, J.).

The issue in that adversary proceeding was whether to grant Mesaba Airlines a preliminary injunction to affirm its right to seek NMB services, maintain the Section 6 status quo, and head off unions' attempts at self-help strikes. Id. at 116-17. In granting the preliminary injunction against the flight attendants' union, Judge Kishel concluded that the "mere passage of . . . time did not terminate the information process of Section 6 negotiations," and that without the airline's "objective manifestation" that conferences had terminated, mediation was required. Id. at 131.

There are several relevant similarities between the Mesaba Aviation case and this one. In Mesaba Aviation, the court identified at least three instances when more than ten days had elapsed between face-to-face negotiations involving the airline and the flight attendants' union. Id. at 123. Similarly, in this situation, there appear to have been numerous periods when more than ten days elapsed between employer-union communications. Also, in Mesaba Aviation, the union's general counsel could point to no specific communication where he had stated that "[t]he negotiations are over" or "[t]he conference is terminated." Id. at 131. Here, Great Lakes can point to no specific communication when it unequivocally stated that negotiations had terminated. Finally, in Mesaba Aviation, there were inconsistencies between the union's written positions and its legal defense against the injunction. Id. at 131 n.23. In this situation, Great Lakes' written positions as stated in correspondence of September 26, 2007, and October 3, 2007, tend to be inconsistent with its position in this Motion.

The Court agrees with Great Lakes that a year and three months is a long gap between face-to-face negotiations and a union's request for NMB services. However, IAM characterizes the gap as nothing unusual, and case law affirms that the negotiation and mediation process is intended to be "long and drawn out" and can be "almost interminable." Detroit & T.S.L.R. Co., 396 U.S. at 149. Further, the decision in Mesaba Airlines, which was issued more than nine months before IAM requested mediation, effectively put Great Lakes on notice that if it considered conferences to have terminated, it should have provided a clear and unequivocal communication to that effect.

For these reasons, the Court concludes that Great Lakes has not sufficiently demonstrated that it will succeed on the merits of whether conferences have "terminated" such that injunctive relief may be ordered.

### 2. Remaining Factors

As for the other Dataphase and Norris-LaGuardia factors, none outweighs Great Lakes' failure to show likelihood of success.

Typically in motions such as this the public interest is paramount because there is a strike looming and disruption of air service would "seriously impair both business and personal travel of thousands of people." Northwest Airlines, Inc., 712 F. Supp. at 739; see also Mesaba Airlines, 350 B.R. at 136 (circumstances of possible airline strike "push [public interest factor] right to the fore"). The parties agree that while aircraft maintenance is of great public concern, there is no immediate strike threat. Here, the public interest factor is not determinative.

Great Lakes claims that compelled mediation will cause it irreparable harm. However, NMB mediation is not compulsory arbitration, and § 156 "impose[s] upon the parties an obligation to make every reasonable effort to negotiate a settlement." Detroit & T.S.L.R. Co., 396 U.S. at 149. Accordingly, it is not apparent how a mediation session that brings these parties together is unreasonable or does Great Lakes irreparable harm.

The other factors—whether Great Lakes has other remedies at law and whether public officers are (or are not) poised to help—are geared more toward immediate breaches of the peace and seem ill-suited to a motion to forestall mediation. See, e.g., Rochester Tel. Corp. v. Comm'n Workers of Am., 456 F.2d 1057, 1058 (2d Cir. 1972) (per curiam) (voiding injunction enjoining union members from intentionally cutting telephone cables where there was no allegation that public officers would not offer protection). Again, these factors are not determinative, and Great Lakes' failure to establish why these factors require relief further underscores why injunctive relief is improper.

On balance, the Dataphase and Norris-LaGuardia Act factors compel the conclusion that Great Lakes' Motion for a Preliminary Injunction should be denied.

**CONCLUSION**

The first-filed rule does not require the Court to transfer venue of this matter pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). However, Great Lakes has failed to establish that it likely will succeed on the merits regarding whether contract negotiation conferences have "terminated" within the meaning of the Railway Labor Act. Accordingly, **IT IS HEREBY ORDERED that**:

1. The IAM Defendants' Motion to Change Venue (Docket No. 11) is **DENIED**; and

2. Great Lakes' Motion for a Preliminary Injunction (Docket No. 4) is **DENIED**.

Dated: November 1, 2007

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge
